# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| **ALEX CAMPOS and MICHAEL YORK, individually and on behalf of all similarly situated individuals,** | |
| **Plaintiffs,** | |
| **v.** | **1:03-cv-3577-WSD** |
| **CHOICEPOINT, INC.,** | |
| **Defendant.** | |

## ORDER

This matter is before the Court on Representative Plaintiffs' Motion for

Class Certification [37].  On November 21, 2005, the Court conducted a hearing

(the "Hearing") on Plaintiffs' motion.[1]

_____

[1]  Also before the Court is the Motion for Permission for the Law Firm of
Lidsky, Vaccaro & Montes and R. Joseph Costanzo, Jr. to Withdraw as Co-
Counsel and to Appoint Malakoff, Doyle and Finberg, P.C., as the Lead Counsel
for the Representative and Proposed Class Plaintiffs [53].  The motion was filed to
address a potential conflict arising out of the close personal and business
relationships between the withdrawing counsel and named Plaintiffs.  Defendant
does not oppose the motion.  See L.R. 7.1B, N.D.Ga.  Having reviewed the motion
to withdraw, the Court grants the motion permitting Lidsky, Vaccaro & Montes
and R. Joseph Costanzo, Jr. to withdraw as co-counsel, and appointing Malakoff,
Doyle and Finberg, P.C. as lead counsel for the representative and proposed class
plaintiffs.  See L.R. 72, N.D.Ga.  Counsels' withdrawal is conditioned on their
providing the Court assurance they no longer have an economic interest in or

## I.   <u>BACKGROUND</u>

Plaintiffs bring claims against Defendant ChoicePoint Services Inc.[2] ("Defendant" or "ChoicePoint"), under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*., for both willful (Count I)[3] and negligent (Count II)[4] violations of the FCRA.  Specifically, Plaintiffs allege Defendant violated Section 1681g(a)(1) of the FCRA "by failing to disclose '*all* information in the consumer's file at the time of the request . . .' when requested by an individual and

---

control over the litigation.

[2]  Plaintiffs named ChoicePoint Inc. as the Defendant in their First Amended Class Action Complaint [7].  Plaintiffs, ChoicePoint Inc. and ChoicePoint Services Inc. filed a Consent Order requesting the substitution of ChoicePoint Services Inc. for ChoicePoint Inc. as Defendant in this action pursuant to Federal Rules of Civil Procedure 17(a) and 21.  (Consent Order [52].)  The parties agree that "ChoicePoint" as used in the First Amended Class Action Complaint and in the Motion for Class Certification shall mean ChoicePoint Services Inc. . . . ."  (Consent Order ¶ 7.)  Having reviewed the Consent Order, the Court allows the substitution of ChoicePoint Services Inc. for ChoicePoint Inc.

[3]  Section 1681n provides that any person who willfully fails to comply with the requirements of the FCRA is liable for actual damages or statutory damages of not less than $100 and not more than $1,000, punitive damages, attorney's fees and costs.  15 U.S.C. § 1681n(a).

[4]  Section 1681o provides that any person who negligently fails to comply with the requirements of the FCRA is liable for actual damages, attorney's fees and costs.  15 U.S.C. § 1681o(a).

upon tender of the appropriate fee."  (First Am. Class Action Compl. ("Compl.") ¶ 1 (quoting 15 U.S.C. § 1681g).)

Defendant is an operating company which, along with its subsidiaries, is in the business of "assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties."  15 U.S.C. § 1681a(f).  (Def.'s Opp'n to Pls.' Mot. for Class Cert. at 3.) The information gathered by Defendant includes insurance policy and claim data contributed by insurance companies.  Defendant's customers purchase this information in the form of "CLUE Auto" or "CLUE Property" reports.  (Def.'s Opp'n to Pls.' Mot. for Class Cert. at 3; Pls.' Mot. for Class Cert. at 3.)[5]

Defendant maintains records of people who make requests for information maintained by Defendant about the consumer, classifying them as either (i) "curious" or (ii) "adversely affected" customers.  (Pls.' Mot. for Class Cert. at 6.)

---

[5]  Defendant has numerous subsidiaries which also gather and sell personal information.  ChoicePoint WorkPlace Solutions, Inc. collects information for customers to use in pre-employment screening.  This information includes credit, criminal and driving record checks, prior employment verification, and education and licensing verification.  Rapsheets Acquisition Corporation provides criminal history information to customers.  Resident Data, Inc. provides tenant screening services, including information regarding prior evictions.  (Def.'s Opp'n to Pls.' Mot. for Class Cert. at 3-4; Pls.' Mot. for Class Cert. at 3-4.)

A "curious" consumer is "someone [who] just wants to see their report," while an "adversely affected" consumer is "someone who has been 'impacted' by the issuance of a consumer report whether by the denial of insurance or otherwise." (Pls.' Mot. for Class Cert. at 7.)[6]

The named Plaintiffs in this lawsuit are Alex Campos ("Campos") and Michael York ("York"). Both York and Campos were curious consumers who each sent Defendant an identical request[7] for specific information from Defendant. The request stated:

> Please send me a copy of my consumer report. I have enclosed a check in the amount of $9.00 in connection with this request. If you have any questions or concerns, or if you need more information, please contact me immediately. Thank you for your anticipated cooperation.

(Appendix in Support of Mot. for Class Cert. ("Class App.") 0770, 0779.)

On July 7, 2003, Campos received a letter from Defendant, informing him that Defendant has two types of consumer reports -- "C.L.U.E. Auto" and

---

[6] Adverse action is defined by the FCRA to include, *inter alia*, a denial, cancellation or charge for insurance, or a denial of employment. 15 U.S.C. § 1681a(k)(1)(B).

[7] Both named Plaintiffs obtained the forms they used to make their request from class counsel. (Def.'s Opp'n to Pls.' Mot. for Class Cert. at 8.)

"C.L.U.E. Property." The letter requested that Campos specify which report he wanted to receive, and enclose nine dollars per requested report. (Compl. ¶ 18.) On June 19, 2003, Defendant responded to York's request by sending to him his CLUE Auto report, but not his CLUE Property report. (Id. ¶¶ 20-22.) Plaintiffs claim Defendant's failure to provide Campos and York with all information contained in all their "files" when they requested their "consumer reports" violated Section 1681g(a)(1) of the FCRA.

Plaintiffs request certification of a class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).[8] Plaintiffs propose certification of a class consisting of "all persons since November 24, 2001 who requested that ChoicePoint disclose the contents of their files, who tendered the applicable disclosure fee, and to whom ChoicePoint failed to disclose all the information in their files." (Pls.' Mot. for Class Cert. at 5.) Plaintiffs' proposed class includes both curious and adversely affected consumers. The size of the proposed class of curious consumers is approximately six thousand persons, while the size of the proposed class of

---

[8] In their Complaint, Plaintiffs seek certification of a class under Rules 23(b)(2) and 23(b)(3). Plaintiffs abandon their request for certification under Rule 23(b)(2). (Hearing Tr. at 43.) There is no private right of action for injunctive relief under the FCRA.

adversely affected consumers is over one million individuals.  (Def.'s Supplemental Br. in Opp'n to Mot. for Class Cert. at 2-3; Keen Aff. [46].)

Defendant opposes Plaintiffs' motion for class certification on the following grounds:  (i) the Court cannot determine membership in the proposed class without individualized inquiries, (ii) individual issues, including determinations of liability and damages, predominate over common ones, (iii) a class action is not the superior method to resolve this case, (iv) the representative Plaintiffs' claims and defenses are not typical of affected persons' claims, and (v) the representative Plaintiffs may have interests antagonistic to class members who suffered actual damages.[9]

---

[9]  Defendant also opposes certification on the grounds that ChoicePoint Services Inc., not ChoicePoint Inc., is the proper defendant in this action, and because both representative Plaintiffs have very close business and personal relationships with Carlos Lidsky and Joseph Costanzo, two of the counsel for the representative Plaintiffs.  These arguments are moot now that the parties have filed their Consent Order providing for the substitution of ChoicePoint Services Inc. for ChoicePoint Inc., and Lidsky, Vaccaro & Montes and R. Joseph Costanzo, Jr. have filed their motion to withdraw as co-counsel for the representative Plaintiffs.

II.   **DISCUSSION**

    A.   <u>Plaintiffs' Claims Under Section 1681g</u>

    The underlying issue in this case is whether Defendant violated the FCRA by failing to disclose to requesting consumers all information Defendant maintains on them in their consumer "files" when they requested copies of their "consumer reports." (Pls.' Mot. for Class Cert. at 1.) The parties agree on a wide variety of Defendant's practice of disclosing information to requesting consumers and how Defendant responded to Plaintiffs' requests in particular. The parties have fundamentally different views of the requirements of the FCRA.

    The purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b).[10] To ensure the accuracy of the

---

[10] The parties agree that Defendant is a "consumer reporting agency," as defined by the FCRA. (Def.'s Opp'n to Pls.' Mot. for Class Cert. at 3 n.2.)

information kept by a consumer reporting agency about a consumer, Section 1681g

provides, in pertinent part:

> Every consumer reporting agency shall, upon request,
> and subject to section 1681h(a)(1) of this title, clearly and
> accurately disclose to the consumer:
>
>> (1) All information in the consumer's file at the time
>> of the request . . . .

15 U.S.C. § 1681g(a).  The FCRA defines "file" to include all information the

consumer reporting agency has with respect to a particular consumer:

> The term "file", when used in connection with
> information on any consumer, means all of the
> information on that consumer recorded and retained by a
> consumer reporting agency regardless of how the
> information is stored.

15 U.S.C. § 1681a(g).  The FCRA defines "consumer report" broadly to include

any communication of information by a consumer reporting agency regarding a

consumer:

> The term "consumer report" means any written, oral, or
> other communication of any information by a consumer
> reporting agency bearing on a consumer's credit
> worthiness, credit standing, credit capacity, character,
> general reputation, personal characteristics, or mode of
> living which is used or expected to be used or collected
> in whole or in part for the purpose of serving as a factor
> in establishing the consumer's eligibility for --

(A) credit or insurance to be used primarily for personal, family, or household purposes;

(B) employment purposes; or

(C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d) (footnote omitted).[11]

Defendant argues it complied with the requirements of the FCRA. When Defendant receives a request from a curious person for disclosure of a consumer report, the request is routed to an information consultant. (Def.'s Opp'n to Pls' Mot. for Class Cert. at 5.) This consultant tries to ascertain what information the consumer is requesting, and sends the consumer what he requested if it can be determined from the consumer's request.[12] If the consultant cannot determine what

---

[11] Section 1681g by its terms distinguishes between "files" and "consumer reports." For example, subsection (a)(1) entitles a person to "file" information. Where a consumer reporting agency provides a "consumer report" to persons, a consumer is entitled under subsection (a)(3)(A) to the "identification of each person . . . that procured a *consumer report*" for employment and other permitted purposes. 15 U.S.C. § 1681g(a)(3)(A) (emphasis added). From the definitions of "file" and "consumer report" in the statute, it is clear these terms pertain to different sets of information and different records.

[12] Section 1681h discusses the form and manner of disclosure, noting that a consumer has options on how the disclosure is made although written disclosure generally is what is required.

information the consumer is requesting, he asks the consumer to clarify the

information request.  This is what occurred when Plaintiff Campos requested "a

copy of [his] consumer report," and Defendant responded with a letter asking him

which particular report he would like to receive.[13]

Defendant has a different procedure for disclosing information to consumers

who have been adversely affected by information contained in a consumer report.

When an adversely affected person contacts Defendant, Defendant determines

which reports have been ordered by customers about that person and provides

these reports to the adversely affected consumer, thereby disclosing to the

consumer the information forming the basis of the adverse action.  (Def.'s Opp'n

to Pls.' Mot. for Class Cert. at 7.)[14]

Defendant argues:  "Remarkably, the representative plaintiffs take the

position that even where a consumer requests a specific report, there is an absolute

legal obligation to provide that consumer with every report that [Defendant] has

_____

[13] Plaintiff York received a copy of his CLUE Auto report in response to his
request.  This was apparently in violation of Defendant's consumer disclosure
policy.  (Def.'s Opp'n to Pls.' Mot. for Class Cert. at 21.)

[14] Facially, this appears to be a reasonable response to a request.  The
question is whether it violates the FCRA for the reasons urged by Plaintiffs.

compiled on that person."  (Def.'s Opp'n to Pls.' Mot. for Class Cert. at 14.)

Defendant believes "if the consumer does make a specific request for one type of

report, ChoicePoint is obligated only to furnish that report."  (Def.'s Sur-Reply to

Pls.' Reply in Supp. of Mot. for Class Cert. at 4.)

Plaintiffs argue that once a consumer makes any "request" for information --

in this case a specific request for a "consumer report" -- Defendant is obligated to

disclose all information in that consumer's "file."  (Hearing Tr. at 22-25.)

Specifically, Plaintiffs claim Defendant "has no central function designed to provide

all information in a particular consumer's 'file' in order to provide a complete file

disclosure when it receives a requests pursuant to 15 U.S.C. § 1681g(a)," and that

Defendant sells subdivisions of a consumer's file, including property-loss claims

and auto-loss claims, separately for nine dollars each.  (Pls.' Mot. for Class Cert. at

8-9.)  Plaintiffs claim Defendant violates the FCRA in two different ways.  First,

when it receives a request for a consumer report from a curious person, Defendant

asks them whether they want a property insurance report or an auto insurance

report, instead of providing a complete disclosure of all "file" information.

Second, when it receives a request for a consumer report from an adversely

affected consumer, Defendant responds by providing only the portion of the

person's "file" that relates to the adverse action.  Plaintiffs argue both actions

violate the FCRA because, under either method, the individual making the request

does not receive all the information in his "file."  (Pls.' Mot. for Class Cert. at 10-

11.)

The Court is wary of analyzing the merits of Plaintiffs' claims at this stage of

the proceedings.  However, the Court must identify the contours of Plaintiffs'

claims to analyze whether class certification is appropriate, and, if it is, which

consumers should be included in the class.  See Cooper v. Southern Co., 390 F.3d

695, 712 (11th Cir. 2004) (noting "evidence pertaining to the requirements

embodied in Rule 23 is often intertwined with the merits").

The issue presented by Plaintiffs' claims is whether a consumer reporting

agency is obligated to disclose to the consumer all information in the consumer's

file when the consumer requests a "consumer report."  The parties do not dispute

that if a consumer requests his "file" from Defendant, then Defendant is obligated

to disclose the entire file.  Where the parties differ, is the extent of Defendant's

obligation when the consumer makes a specific request for a "consumer report."

This difference appears to stem from the parties' divergent interpretations of a

Section 1681g "request."  Defendant contends, and its policy was, that where a

consumer makes a request for a consumer report or a particular portion of the file
(*e.g.*, CLUE Auto report), Defendant can simply disclose that particular portion of
the file.  Plaintiffs contend that even if the consumer requests a consumer report, or
any specific set of information, Defendant is obligated to disclose the entire file.[15]
The question is whether this claim is properly prosecuted as a class action.

B.    Plaintiffs' Motion for Class Certification

"The initial burden of proof to establish the propriety of class certification
rests with the advocate of the class."  Rutstein v. Avis Rent-A-Car Sys. Inc., 211
F.3d 1228, 1233 (11th Cir. 2000).  In considering class certification, the Court must
accept as true all allegations in Plaintiffs' complaint, and not reach the merits of the

---

[15]  The statute does not define the term "request."  On one hand, because a
stated purpose of the FCRA is to provide consumers with a method to ascertain
the accuracy of information collected and provided about them, one can argue the
term "request" should be broadly interpreted and a consumer reporting agency be
required to disclose all information in its file about the consumer upon any
"request" by the consumer.  On the other, if a consumer explicitly limits his request
to a particular subset of his file, and indicates explicitly that he does not want other
portions to be disclosed, it is nonsensical, and contrary to the purposes of the
FCRA, to require a consumer reporting agency to disclose the entire file.  At this
stage of the proceedings it is not necessary for the Court to determine the merits of
Plaintiffs' claims.  However, the Court observes that Plaintiffs' claims likely
depend, at least in part, on the content and form of the "request" made by the
consumer and whether its specific request for the "consumer report" constitutes a
request for a "file."

complaint or weigh evidence.  See Eisen v. Carlisle & Jacquelin, 417 U.S. 156,

177-78 (1974); In re Theragenics Corp. Sec. Litig., 205 F.R.D. 687, 694 (N.D. Ga.

2002).  However, the Eleventh Circuit has noted:

> [W]hile it is true that a trial court may not properly reach
> the merits of a claim when determining whether class
> certification is warranted, this principle should not be
> talismanically invoked to artificially limit a trial court's
> examination of the factors necessary to a reasoned
> determination of whether a plaintiff has met her burden of
> establishing each of the Rule 23 class action
> requirements. . . .  [E]vidence pertaining to the
> requirements embodied in Rule 23 is often intertwined
> with the merits, making it impossible to meaningfully
> address the Rule 23 criteria without at least touching on
> the 'merits' of the litigation.

Cooper, 390 F.3d at 712.

To maintain this case as a class action, Plaintiffs must satisfy all the

requirements of Federal Rule of Civil Procedure 23(a) and at least one of the

requirements of Rule 23(b).  See Fed. R. Civ. P. 23(a)-(b); Rutstein, 211 F.3d at

1233.  The Court will evaluate Plaintiffs' motion to certify (i) a class of curious

consumers, and (ii) a class of curious and adversely affected consumers.

C.      Rule 23(a)

Rule 23(a) provides:

-14-

> One or more members of a class may sue or be sued as
> representative parties on behalf of all only if (1) the class
> is so numerous that joinder of all members is
> impracticable, (2) there are questions of law or fact
> common to the class, (3) the claims or defenses of the
> representative parties are typical of the claims or defenses
> of the class, and (4) the representative parties will fairly
> and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  "These four requirements commonly are referred to as the

prerequisites of numerosity, commonality, typicality, and adequacy of

representation, and they are designed to limit class claims to those fairly

encompassed by the named plaintiffs' individual claims."  Piazza v. Ebsco Indus.,

Inc., 273 F.3d 1341, 1346 (11th Cir. 2001) (quotation and citation omitted).

      1.    *Numerosity*

To satisfy the numerosity requirement, Plaintiffs must establish that the

members of the proposed class and subclass are "so numerous that joinder of all

members is impracticable."  Fed. R. Civ. P. 23(a).  In determining whether the

proposed class contains a sufficient number of members, the Court is permitted to

"make common sense assumptions in order to find support for numerosity."

Evans v. U.S. Pipe & Foundry, 696 F.2d 925, 930 (11th Cir.1983).

Defendant does not contest numerosity.  Having reviewed the evidence of

record, including evidence that a class of curious consumers would consist of

approximately six thousand members and a class of both curious and adversely

affected consumers would consist of approximately one million members, the

Court finds that both proposed classes meet the numerosity requirement.  See

generally Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986)

(noting classes of more than forty members typically satisfy the numerosity

requirement).

2.     *Commonality*

To satisfy the commonality requirement, Plaintiffs must demonstrate that

questions of law or fact are common to the entire class.  Fed. R. Civ. P. 23(a).  "It

is not necessary that all questions of law and fact be common."  In re Theragenics

Corp. Sec. Litig., 205 F.R.D. at 694.  Instead, the commonality inquiry "focuses

on whether a sufficient nexus exists between the legal claims of the named class

representatives and those of individual class members to warrant class

certification."  Piazza, 273 F.3d at 1347; see also Cooper, 390 F.3d at 714

("Nevertheless, the named plaintiffs' claims must still share the same essential

characteristics as the claims of the class at large.").

With regards to the proposed class of curious consumers, the Court

concludes Plaintiffs have satisfied the commonality requirement with respect to

other consumers who have requested Defendant to provide them with a "consumer report."  Specifically, the Court finds this case presents the question whether Defendant violated the FCRA by not providing a consumer's entire file in response to requests from curious consumers for "consumer reports."[16]  The central issue in the case -- whether Defendant violated the FCRA in failing to disclose the entire file upon request for a consumer report by a curious consumer

-- arises out of Defendant's standardized method of responding to requests by curious consumers, and is common to each potential class member.  This common question of statutory interpretation, deriving from Defendant's standardized business practice, makes Plaintiffs' claims appropriate for treatment as a class action.[17]

However, the Court finds the proposed class including adversely affected consumers does not satisfy the commonality requirement.  Although the issues

---

[16]  Counsel for Defendant stated it would be possible to examine the files of most members of the proposed class of curious consumers to determine the type of request made by each person.  (Hearing Tr. at 79-80.)  For the purpose of the class definition a request for a consumer report shall include a request for any report for any purpose set forth in Section 1681a(d).

[17]  A class action could well settle the issue whether requests like those made by the class representatives impose an obligation to disclose a consumer's entire file, even information not used for the purposes set forth in Section 1681a(d)(1).

presented by both sets of consumers concern the same provision of the FCRA, the differences between the adversely affected and curious consumers are substantial. Plaintiffs have only submitted evidence regarding one type of request made by curious consumers, and have not demonstrated that adversely affected consumers made similar requests.[18]  The Court observes it is reasonable to assume that requests made by those who have been adversely affected would differ substantially from those made by curious consumers.  For example, it is likely a request from an adversely affected consumer would request specific information about the information leading to the adverse event, as opposed to a more general request likely made by a curious consumer.  In contrast to the generalized commonality among the requests from curious consumers, the requests from adversely affected consumers are likely to be different from those of curious consumers.[19]  The content, form and scope of the requests made by each group

_____

[18]  Plaintiffs' failure of proof regarding adversely affected consumers is common to all aspects of their arguments to certify a class including these members.

[19]  Plaintiffs have not alleged or argued facts for the Court to evaluate how, in what form or for what scope, "adversely affected" consumers request information sufficient to determine if there is any commonality in the requests of this alleged class or even a subclass of this larger group.

also likely could affect the ultimate determination of Defendant's obligations under the FCRA.[20]

It is also reasonable to assume the damages suffered by curious and adversely affected consumers also would differ in substantial respects.  The FCRA allows for recovery of actual damages in the form of "either out-of-pocket losses, or . . . humiliation or mental distress [damages], or both."  <u>Riley v. Equifax Credit Info. Servs.</u>, 194 F. Supp. 2d 1239, 1244 (S.D. Ala. 2002).  Adversely affected consumers are more likely to have suffered, and seek to recover, actual damages. For purposes of determining the motion before it, however, the Court only must find that Plaintiffs failed to establish commonality amongst the adversely affected and curious consumers, and certification of a class including adversely affected members is not appropriate.

---

[20] At a minimum, these differences could, from case to case, affect the determination of the level of Defendant's culpability if it is found to have violated the statute.  Such differences could manifest in a case-by-case determination of willful non-compliance with the FCRA, or the determination of the proper amount of statutory damages to impose for such violation.

3.    *Typicality*

The typicality requirement is satisfied if the claims of the class

representatives are typical of the claims of the class members.  "Typicality

measures whether a sufficient nexus exists between the claims of the named

representatives and those of the class at large."  <u>Cooper</u>, 390 f.3d at 713.  The

typicality requirement is closely related to the commonality requirement under Rule

23(a).  While "commonality refers to the group characteristics as a whole . . .

typicality refers to the individual characteristics of the named plaintiff in relation to

the class."  <u>Piazza</u>, 273 F.3d at 1346.  "In making this determination, we have

concluded that a strong similarity of legal theories will satisfy the typicality

requirement despite substantial factual differences."  <u>Piazza</u>, 272 F.3d at 1351.

"However, we do require that the named representatives' claims share the same

essential characteristics as the claims of the class at large."  <u>Prado-Steinman v.</u>

<u>Bush</u>, 221 F.3d 1266, 1279 n.14 (11th Cir. 2000) (quotation and citation omitted).

For the reasons stated above regarding commonality, the Court finds the

representative Plaintiffs' claims and defenses are typical of those of the proposed

class of curious consumers requesting consumer reports.  Plaintiffs' claims arise

from the same course of conduct as the claims of other proposed class members --

Defendant's alleged practice of failing to disclose the consumer's entire file upon request by a curious consumer.  Plaintiffs' claims are also based on the same legal theory as the claims of other proposed class members -- that Defendant's disclosure policy violates the FCRA.  Accordingly, Plaintiffs satisfy the typicality requirement with regards to the proposed class of curious consumers.

However, for the reasons stated above with regards to the commonality requirement, Plaintiffs' claims are not typical of those of the proposed class of adversely affected consumers, including substantial differences with regards to liability and damages.  Plaintiffs do not claim to be adversely affected consumers and the record is devoid of information for the Court to evaluate how, if at all, the claims they allege are typical of claims that could be asserted by adversely affected consumers.  Accordingly, Plaintiffs have not satisfied their burden with respect to the typicality requirement for adversely affected consumers.[21]

---

[21]  Plaintiffs contend a "'curious' person is typical of an 'affected person' (and vice versa) because they have both 'expressed a desire for a file' and have been subject to the same course of conduct:  the failure to provide all information in their file."  (Pls.' Reply to Def.'s Opp'n to Pls.' Mot. for Class Cert. at 4.)  Plaintiffs' argument is not persuasive.  As discussed above, the Defendant's policies for responding to a request from a curious person were different than for responding to an adversely affected person's request.  Furthermore, Plaintiffs have failed to demonstrate adversely affected persons and curious persons made similar requests for disclosure in substance or form.

4.     *Adequacy of Representation*

To satisfy the adequacy of representation requirement, the class representatives must demonstrate they have "common interests with unnamed class members and will vigorously prosecute the interests of the class through qualified counsel." Piazza, 273 F.3d at 1346.  This requirement applies to both the named plaintiff and counsel.  See London v. Wal-Mart Stores, Inc., 340 F.3d 1246, 1253 (11th Cir. 2003).  In evaluating the adequacy factor, the Court follows the "general principle that adequacy of representation is primarily based on the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the class and whether plaintiffs have interests antagonistic to those of the rest of the class. London, 340 F.3d at 1254 (quotation and citation omitted).

Defendant does not challenge that counsel for the representative Plaintiffs are experienced, qualified and generally able to conduct the litigation.  The Court's review of the parties' pleadings and the argument of counsel at the Hearing indicates to the Court that adequacy of counsel is not an issue here.  (See also Pietz Decl., attached to Pls.' Mot. for Class Cert.)  The question is whether Plaintiffs can demonstrate that the representative Plaintiffs meet the requirements for adequacy of representation of either of the classes alleged.

The class representatives are curious consumers, and do not claim to have been adversely affected.  It is undisputed the case was instituted as a curious consumer's request and not a complaint that Defendant has provided any information that had any adverse impact on the class representatives.  Having reviewed the parties' submissions, it appears the class representatives are interested in this litigation and will adequately represent and advocate on behalf of the class of curious consumers.  There is no evidence before the Court from which the Court can conclude Plaintiffs will adequately represent the interests of those who have been adversely affected.  Of particular concern to the Court is the motivations of these two subsets of proposed class members.  The curious consumers, including the named Plaintiffs, appear mostly interested in "making a point."  This is evidenced by the fact that both named Plaintiffs obtained the forms they used to make their request from class counsel.  (Def.'s Opp'n to Pls.' Mot. for Class Cert. at 8.)  However, the Court assumes, and in the absence of any information provided by Plaintiffs can only assume, that adversely affected consumers may have suffered actual injury and may seek to vindicate a violation of their rights more vigorously, as well as seek damages above and beyond those sought by simply curious consumers.  The Court's experience in litigation brought by adversely

-23-

affected consumers is they are more emotionally and personally invested in the litigation they instituted.  Their attitude in litigation is distinctly different from what the Court has observed of the representatives and their lawyers in this case.  Accordingly, while the Court finds Plaintiffs have established the adequacy of representation requirement has been met with regards to the proposed class of curious consumers, they have not for the proposed class including adversely affected consumers.

     D.    <u>Rule 23(b)</u>

To certify a class, Plaintiffs also must satisfy one of the requirements of Rule 23(b).  To satisfy their Rule 23(b) requirement, Plaintiffs proceed under Rule 23(b)(3).  Under Rule 23(b)(3), the Court considers (i) whether "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and (ii) whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  These requirements are commonly referred to as the predominance and superiority requirements.

     1.    *Predominance*

To satisfy the predominance requirement, "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.  The predominance inquiry focuses on the legal or factual questions that qualify each class member's case as a genuine controversy, and is far more demanding than Rule 23(a)'s commonality requirement."  Rutstein, 211 F.3d at 1233 (quotation and citation omitted).  To determine whether common questions predominate, the Court must examine the cause of action asserted in the complaint on behalf of the putative class and consider what value the resolution of the class-wide issue will have in each class member's underlying cause of action.  Id. at 1234.  "Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)."  Klay v. Humana, Inc., 382 F.3d 1241, 1255 (11th Cir. 2004).  That damages must be calculated for individual class members does not bar class certification, if the damages "can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods . . . ."  Klay, 382 F.3d at 1259-60.

Defendant claims individual issues predominate over common ones. Defendant first argues the class itself cannot be determined absent individual inquiries into what the particular consumer requested.  "[A] proposed class is permissible under Rule 23 so long as it is not too amorphous or incapable of a reasonably precise definition. . . .  Case law is clear that there is no requirement that every classmember, other than the named plaintiffs, be identified at the outset of the litigation.  Instead, a class definition is necessary only to establish that the class does, in fact, exist and that its members will be identifiable."  Neumont v. Monroe County, Fla., 198 F.R.D. 554, 557-58 (S.D. Fla. 2000).  Here, Counsel for Defendant stated it would be possible to examine the files of most members of the proposed class of curious consumers to determine which consumers requested general or specific information.  (Hearing Tr. at 79-80.)

The Court also has an obligation to specify the class so it is identifiable. Here, the representative Plaintiffs requested from Defendant a "consumer report" -- a term defined by Section 1681(a).  Plaintiffs contend this request entitled them to all information in their files, while Defendant argues they were entitled only what they specifically requested.  Because Plaintiffs' use of a term defined by the FCRA is significant in determining the scope of Plaintiffs' request and Defendant's

resulting obligation to disclose information, common questions of law and fact predominate here only if the class is limited to members who were curious *and* specifically requested a "consumer report."

Defendant also argues individualized inquiries are necessary for determinations of both negligence and willfulness. The Court does not agree. In this case, the parties essentially agree about the method by which Defendant discloses information to consumers upon their request. The question before the Court is whether Defendant's practice violates the FCRA -- a matter of statutory interpretation.

Defendant's arguments regarding the necessity of individualized inquiries are overcome by the common questions presented by the curious class members' claims. The focal point of this action is Defendant's alleged, and admitted (see Hearing Tr. at 67-71), practice of responding to curious consumer's requests for a consumer report in a manner which allegedly violates the FCRA. The issues of law and fact which stem from Defendant's policy predominate over individual issues. Because common issues of law and fact are likely to dominate the proceedings for curious consumers who requested a "consumer report," common questions of law and fact predominate.

However, for the reasons stated above regarding Plaintiffs' failure to establish commonality and typicality for adversely affected consumers, including the factual differences in the form and substance of requests made, Defendant's response to such requests, and the differences in damages sought, the Court finds Plaintiffs have failed to establish that common issues of law and fact predominate a class defined to include adversely affected consumers.

### 2.    *Superiority*

The superiority requirement requires Plaintiffs to demonstrate the class action is the superior method for adjudication of the controversy.  The Court's "focus is not on the convenience or burden of a class action suit *per se*, but on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs."  Klay, 382 F.3d at 1269.  Rule 23(b)(3) suggests four factors for the Court to consider in making this determination:  (1) the interest of members of the class in individually controlling their claim, (2) other litigation already commenced by members of the class, (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum,[22]

---

[22]   In considering the third factor, courts frequently cite the following factors in favor of certifying a class:  (i) economies of time, effort and expense for the litigants, (ii) the plaintiff's claim may be so small that he would not file suit

and (4) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3); <u>Klay</u>, 382 F.3d at 1269.  In <u>London v. Wal-Mart Stores, Inc.</u>, 340 F.3d 1246 (11th Cir. 2003), the Eleventh Circuit expressed doubt whether class certification could meet the superiority requirement where:

> the alleged illegality of the contracts at issue here occurred through the [defendant's] failure to follow the requirements of a complex regulatory scheme, subject to different reasonable interpretations.  In addition, the plaintiffs suffered no economic harm.  Under such circumstances, even though economic harm is not an element of the [underlying claim], it may be required for superiority under the Federal Rules of Civil Procedure.  This is especially likely when, as in the present suit, the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff.

<u>London</u>, 340 F.3d at 1255 n.5.  In <u>Klay</u>, however, the Court was not disturbed by the potential for large damages because the alleged RICO violations were predicated upon serious federal criminal acts.

---

individually and it is unlikely plaintiffs' attorneys would be willing to pursue the claim, and (iii) the desirability of concentrating claims in a particular forum when that forum has handled several preliminary matters.  <u>Klay</u>, 382 F.3d at 1270-71.  In finding it undesirable to certify a class under this factor, "[p]erhaps most importantly, [the Court] assess[es] whether the potential damages available in a class action are grossly disproportionate to the conduct at issue."  <u>Klay</u>, 382 F.3d at 1271.

With regards to the proposed class of curious consumers who requested a consumer report, the Court finds the superiority requirement has been met.  First, as discussed previously, this action concerns a set of legal and factual issues which are shared by the members of the class who requested a consumer report, and class certification is more efficient than individual suits at addressing these common questions.  The Court also believes that the consumer protection purposes of the FCRA are furthered by certification of a class to address the issue raised in this action.

Second, the potential recovery for each curious consumer is minimal.  In such situations, a class action is superior to individual actions for which attorneys and aggrieved consumers will have little motivation to bring suit.  This is evidenced by the parties' representations that there are no other lawsuits which have been filed to address this particular issue.  (Pls.' Mot. for Class Cert. at 22.)

Finally, a class action would be a more efficient use of judicial resources than trying individual cases.  The result of denial of class certification could be the filing of other lawsuits which seek to litigate nearly identical, if not identical, claims.

However, with regards to the proposed class which includes the adversely affected consumers, the Court finds the superiority requirement has not been met.

The FCRA provides sufficient motivation for adversely affected individuals to bring suit and for attorneys to represent them.  The statute allows for the recovery of actual damages, including emotional distress damages, which are more plausible for those who have been adversely affected than those who are only curious, and such damages, along with the statutory provision entitling a plaintiff to recover costs and attorney's fees, should provide sufficient motivation for individual adversely affected plaintiffs to bring suit.

Furthermore, if the Court were to certify a class of over one million individuals, the concerns mentioned in Klay and London would be implicated.  The statute provides for damages between $100 and $1000, and the proposed class of adversely affected persons consists of approximately one million individuals, and thus Defendant's potential liability could exceed one billion dollars.  The statutory provision which Defendant allegedly violates is, at most, ambiguous.  Unlike Klay, here there exists substantial danger that "plaintiffs are attempting to obtain a windfall based on minor or technical violations," Klay, 382 F.3d at 1272, which Plaintiffs claim at most discloses a possible ambiguity in the statute. "[D]efendant['s] potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff."  London, 340 F.3d at 1255 n.5.

For these reasons, Plaintiffs have not established that a class action is a superior method to resolve the claims of adversely affected individuals.

## III.   <u>CONCLUSION</u>

For the reasons stated above,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Class Certification [37] is **GRANTED IN PART** and **DENIED IN PART**.  The Court **GRANTS** Plaintiffs' motion to certify a class of curious consumers, consisting of all persons since November 24, 2001 who requested that ChoicePoint disclose their "consumer report," who tendered the applicable disclosure fee, and to whom ChoicePoint failed to disclose all the information in their files.  The Court **DENIES** Plaintiffs' motion to certify a broader class including all curious consumers or a class including adversely affected consumers.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Permission for the Law Firm of Lidsky, Vaccaro & Montes and R. Joseph Costanzo, Jr. to Withdraw as Co-Counsel and to Appoint Malakoff, Doyle and Finberg, P.C., as the Lead Counsel for the Representative and Proposed Class Plaintiffs [53] is **GRANTED**.  Counsels' withdrawal is conditioned on their providing the Court assurance they no longer have an economic interest in or control over the litigation.

**IT IS FURTHER ORDERED** that the parties shall submit to the Court, on or before April 17, 2006, a detailed plan of discovery which provides for the completion of discovery by August 1, 2006.

**SO ORDERED**, this 27th day of March, 2005.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE